IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KAMENSKI, | ) | CASE NO. 1:14-cv-01589 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WELLINGTON EXEMPTED | ) | |
| VILLAGE SCHOOLS, et al., | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) | |

Christopher Kamenski ("Kamenski") is a former employee of Defendant Wellington Exempted Village Schools ("WEVS").  His employment ended in June 2013.[1]  Kamenski brings this case to recover damages for Defendants'[2] alleged acts of retaliation and retaliatory harassment against him in violation of federal and state law.  Second Amended Complaint, Doc. 26.  He charges that the WEVS Board of Education ("BOE"), at a July 2013 meeting, "discussed and decided that a derogatory and defamatory letter should be sent" to his new employer.  Doc. 26, ¶ 65.  Defendants deny this allegation.  Doc. 31, ¶ 65.  Kamenski further alleges that an unsigned letter regarding him was sent to his new employer and to others in August 2013.  Doc. 26, ¶ 74.

---

[1] Kamenski was employed by WEVS as its Director of Curriculum and Instruction.  Doc. 26, ¶ 13.  He alleges that he resigned his employment with WEVS on June 29, 2013, and that his resignation "in essence, [] was a constructive discharge."  Id., ¶ 63.  He alleges that he thereafter found a new position with Mason Public Schools in Michigan. Id., ¶ 64.

[2] Kamenski named six Defendants in addition to WEVS.  According to the Second Amended Complaint, one is WEVS's superintendent; three are members of its board; and two are John/Jane Doe Defendants.  Doc. 26, ¶¶5-9.

1

Defendants have filed a Motion for Protective Order (Doc. 56) ("Motion"), which has been referred to the undersigned. Defendants seek an "Order prohibiting the deposition of dissident Board of Education member Ayers Ratliff and otherwise preventing him from testifying concerning what transpired in Executive Sessions, including but not limited to, the July 16, 2013, Executive Session, where the Board's legal counsel were present for the purpose of dispensing legal advice." Doc. 56, p. 1.

The matter has been fully briefed.[3] For the reasons set forth below, the Court **DENIES** Defendants' Motion for Protective Order.

I.     **Defendants' assertion of privilege**

Defendants assert that a protective order is warranted because what transpired during BOE Executive Sessions is privileged under Ohio's statutorily-created executive session privilege and/or is protected from discovery under the attorney-client privilege. Doc. 56. In support of their Motion, Defendants have submitted several documents, including the minutes of the BOE's July 16, 2013, meeting, which contain the resolution adopted by the BOE when going into executive session and a June 19, 2013, notice from the U.S. Equal Employment Opportunity Commission ("EEOC") of a mediation scheduled for July 24, 2013. Docs. 56-1, 56-2, 56-3, 63-1, 63-2, 63-3, 63-4, 63-5, 63-6, 63-7.

II.    **Plaintiff's response**

Plaintiff disputes Defendants' contention that Ohio's executive session privilege operates to bar BOE member Ayers Ratliff ("Ratliff") from testifying regarding what occurred during executive sessions, arguing that evidentiary privileges are to be narrowly construed and state statutory privileges generally are not recognized in federal court. Doc. 76. Plaintiff also argues

---

[3] Plaintiff filed his Opposition on October 28, 2015. Docs, 57, 59, 60, 61. Defendants filed their Reply on November 9, 2015. Doc. 63. In accordance with the undersigned's order for supplemental briefing, Plaintiff and Defendants filed supplemental briefs on April 8, 2016 (Doc. 76) and April 14, 2016 (Doc. 77).

that, even if the BOE properly adjourned into executive session, any discussions that occurred during executive session that were for an improper governmental purpose, i.e., taking retaliatory action against Plaintiff, are not protected. Doc. 76.

Plaintiff also disputes Defendants' assertion of attorney-client privilege, arguing that the mere presence of an attorney at an executive session does not shield discussions occurring during that executive session from discovery. Doc. 57, p. 3. Plaintiff also asserts that, "[i]f the purpose of the meeting is illegal or illegitimate, then privilege cannot attach." Doc. 57, p. 4; *see also* Doc. 57, p. 6.

In support of his Opposition, Kamenski has submitted a declaration and other exhibits, including a copy of the anonymous letter allegedly sent to his new employer. Docs. 57-1, 57-2, 60, 61.

### III.  Law and Analysis

Information deemed privileged has been shielded from disclosure under case law, statutes, and rules. Privileged matter is carved out from the scope of discovery described in Fed. R. Civ. P. 26(b)(1). Determining what constitutes privileged matter requires determining what privilege law applies. In a case filed in federal court, that inquiry is guided by Fed. R. Evid. 501, which provides:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Kamenski's complaint raises federal claims as well as pendent state law claims. Doc. 26. Notwithstanding the presence of pendent state law claims, federal, not state, privilege law applies. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (concluding that federal courts are obligated to apply federal privilege law in federal question cases even when a case also involves pendent state law claims); *see also Hilton Rorar v. State and Federal Communications, Inc.*, 2010 WL 1486916, * 6 (N.D. Ohio Apr. 13, 2010) ("The Sixth Circuit has held that questions of privilege that arise in federal question cases in which pendent state law claims are also raised should be governed by the federal common law of privileges.") (citing Fed. R. Evid. 501; *Hancock*, 958 F.2d at 1373); *Freed v. Grand Court Lifestyles, Inc.*, 100 F.Supp.2d 610, 612 (S.D. Ohio 1998) ("[S]tate privilege law is not controlling in federal question cases.").

Federal Rule of Evidence 501 provides "courts with flexibility to develop rules of privilege on a case-by-case basis." *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990). However, courts have been reminded that since "testimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence, any such privilege must be strictly construed." *Id.* (internal quotations and citations omitted).

### A. Ohio's executive session privilege

"The burden of establishing privilege rests with the party asserting it." *Allen v. Cuyahoga County*, 2014 WL 434558, *3 (N.D. Ohio Feb. 4, 2014). Defendants have not identified a federal privilege that protects discussions occurring during school board executive

sessions;[4] rather, they appear to rely on O.R.C. § 102.03(B) in conjunction with O.R.C. § 121.22(G) as the source of the executive session privilege. Doc. 56, pp. 1, 8. Because claims of privilege in this case are governed by federal law, Defendants' contention that Plaintiff should be barred from discovering information about executive session discussions simply because state statutes may create a privilege applicable to executive sessions lacks merit. *See Horizon of Hope Ministry v. Clark County, Ohio*, 115 F.R.D. 1, * 6 (S.D. Ohio 1986) (concluding that personnel files were subject to discovery in federal civil rights action because there was no privilege for personnel files under federal law); *Allen v. Cuyahoga County*, 2014 WL 434558, *3-6 (N.D. Ohio Feb. 4, 2014) (declining to find that federal common law supported the existence or application of a medical peer review privilege); *see also Freed*, 100 F.Supp.2d at 612 (since state law was not controlling, the court found unpersuasive movant's argument that release of requested information would violate an Ohio statutory provision); *but see Humphries v. Chicarelli*, 554 Fed. Appx. 401 (6th Cir. 2014) (unpublished) (affirming district court's decision to grant Defendants' motion in limine prohibiting individuals from testifying regarding matters discussed during an executive session of a political subdivision)[5]; *see also University Estates, Inc. v. City of Athens*, 2011 WL 796789 (S.D. Ohio Feb. 25, 2011) (finding that discussions occurring during a properly convened executive session were protected from discovery as confidential communications).

Notwithstanding that federal privilege law controls in a federal question case, a court is not foreclosed completely from considering state-created privileges. "A court may consider state

---

[4] "An executive session is one from which the public is excluded and at which only such selected persons as the board might invite are permitted to be present." *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 972 N.E.2d 115 (Ohio App. Ct. 2012) (internal quotations and citations omitted).

[5] The Sixth Circuit in *Humphries* also concluded that the district court had correctly determined that the attorney-client privilege applied to protect the discussions that occurred during the executive session. *Humphries*, 554 Fed. Appx. at 401-402.

privilege law in a federal question case, but the rule it adopts exists as a component of the federal common law, not state law." *Freed*, 100 F.Supp. 2d at 614. The Court need not decide in this case whether federal common law should recognize an executive session privilege based on the Ohio statutes cited by Defendants because, as discussed more fully below, Defendants have not shown that those statutes create an absolute privilege shielding from discovery all discussions occurring during an executive session, nor have Defendants shown that Ohio's executive session privilege, assuming one is created by the cited statutes, would shield discussions occurring during an executive session that are unrelated to the topics properly discussed in executive session pursuant to those statutes.

Defendants have not shown that O.R.C. § 102.03(B) in conjunction with O.R.C. § 121.22(G), which is part of the Ohio Open Meetings Act and/or Ohio Sunshine Law, establish, without exception, the existence of a privilege that protects any and all discussions occurring in executive session.[6] In fact, one Ohio appellate court has concluded that "there is no absolute privilege to be accorded discussions held in executive session." *See Springfield Local School Dist. Bd. of Edn v. Ohio Assoc. of Public School Employees, Local 530*, 106 Ohio App.3d 855, 868 (Ohio App. Ct. 1995).

Moreover, Defendants have not shown that the two Ohio statutes would apply to the facts of this case. O.R.C. § 102.03(B) expressly limits the scope of information that employees are prohibited from disclosing:

> No present or former public . . . employee shall disclose or use, without appropriate authorization, any information acquired by the public . . . employee in the course of the public . . . employee's official duties *that is confidential because of statutory provisions, or that has been clearly designated to the public . . . employee as confidential when that confidential designation is warranted because*

---

[6] The Court recognizes that there are cases within the Sixth Circuit that have read these two sections of the Ohio Revised Code as creating such a privilege. *See Humphries*, 554 Fed. Appx. at 401-402; *University Estates*, 2011 WL 796789, * 1-2. However, neither of these cases discussed whether federal or state privilege law applied.

6

> *of the status of the proceedings or the circumstances under which the information was received and preserving its confidentiality is necessary to the proper conduct of government business.*

O.R.C. § 102.03(B) (emphasis supplied).  Defendants have not established that the discovery they seek to prohibit falls within R.C. 102.03(B).  Defendants have not demonstrated that, discussions, if any, about contacting Kamenski's new employer were "confidential because of statutory provisions," or "clearly designated" to BOE member Ratliff "as confidential," or that preserving the confidentiality of such discussions would be "necessary to the proper conduct of government business."  *See* O.R.C. § 102.03(B).  Accordingly, Defendants have not shown a basis for concluding that Ratliff would be barred under O.R.C. § 102.03(B) from discussing anything that occurred during the July 16, 2013, executive session.

O.R.C. § 121.22 permits a public body to hold an executive session "'for the sole purpose of the consideration of' one of the enumerated exceptions" under O.R.C. §121.22(G).  *See Tobacco Use Prevention & Control Found. v. Boyce*, 185 Ohio App.3d 707, 728 (Ohio App. Ct. Dec. 31, 2009), *affirmed*, 127 Ohio St.3d 511 (2010) (quoting O.R.C. § 121.22(G)).

In adjourning into executive session on July 16, 2013, the BOE cited and quoted subsection (G)(1) of O.R.C. § 121.22.  Board member Calfo made the motion, seconded by member Wulfhoop:

> to move to Executive Session per the Ohio Revised Code 121.22(G)(1) to consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing at 6:37 p.m. with no action taken.

Doc. 56-1, p. 6.

7

Subsection (G)(1) does permit consideration in executive session of ". . . charges . . . *against* a public employee."[7] O.R.C. § 121.22(G)(1) (emphasis supplied). However, the BOE was *not* considering a charge *against* Kamenski when it went into executive session on July 16, 2013. Rather, according to Defendants, the "pending charge" that the BOE was considering was Kamenski's charge against WEVS filed with the EEOC. Doc. 56, p. 2 n.2 (indicating that the purpose of the executive session on July 16, 2013, was to discuss Kamenski's pending EEOC charge that was scheduled for mediation on July 24, 2013); Doc. 56-2. Moreover, Kamenski was not an employee of WEVS on July 16, 2013. Doc. 26, p. 10, ¶ 63 (Kamenski's employment terminated on June 29, 2013); Doc. 63, p. 3, n. 4 (Defendants' Reply in Support of Motion for Protective Order, indicating that Kamenski was no longer an employee as of the July 16, 2013, meeting). Accordingly, discussions during the executive session on July 16, 2013, do not fall squarely within the scope of either the board's resolution to go into executive session or O.R.C. § 121.22(G)(1).

Subsection (G)(3) of O.R.C. § 121.22(G)(3) permits an executive session to be held for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." Although Defendants have not cited subsection (G)(3) in their briefing, they appear to suggest that the BOE was properly in executive session because of pending or imminent litigation. Doc. 56, p. 8 ("In other words, [at the time of the July 16, 2013, Executive Session,] Defendants could reasonably anticipate litigation would ensue."). However, subsection (G)(3) does not apply on the facts presented because the BOE's resolution to adjourn into executive session did not reference that subsection, nor did it reference Kamenski's charge *against* WEVS or the impending mediation.

---

[7] O.R.C. § 121.22(G)(1) does not require that the motion to hold the executive session include the name of the employee who is or may the subject of charges to be considered at the meeting. O.R.C. § 121.22(G)(1).

8

Even assuming *arguendo* that the BOE properly adjourned into executive session under subsection (G)(1) of O.R.C. § 121.22 for the purpose of discussing the charge filed *by* Kamenski or that the discussions regarding Kamenski's charge against WEVS were covered under subsection (G)(3), Defendants have not shown that the information that Plaintiff apparently seeks to discover, i.e., discussions, if any, had during the July 16, 2013, executive session regarding potential or actual communications to or with Kamenski's new employer pertained to Kamenski's EEOC charge and fell within the parameters of either O.R.C. § 121.22(G)(1) or § 121.22(G)(3). *See e.g, Tobacco Use Prevention & Control Found.*, 185 Ohio App.3d at 730 ("[E]ven if the board properly convened in executive session . . . the board's discussions went well beyond this subject matter to . . . topics that should have been discussed in open session.").

For the reasons set forth herein, the Court **DENIES** Defendants' request for a protective order based on Ohio's executive session privilege to preclude discovery about what discussions, if any, occurred during executive sessions, including the one held on July 16, 2013, relating to potential or actual communications to or with Kamenski's new employer.

### B.  Attorney-client privilege

Defendants also contend that discussions that occurred during the July 16, 2013, executive session are protected by the attorney-client privilege.

"[C]orporations and other organizations may constitute clients for purposes of the attorney-client privilege." *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).  As set forth by the Sixth Circuit, the elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7)

from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Id.* at 355-356 (6th Cir. 1998)(citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

"The burden of establishing privilege rests with the party asserting it." *Allen*, 2014 WL 434558 at *3. Thus, for the attorney-client privilege to apply, Defendants must show that each of the foregoing elements is present. Here, Defendants have not met their burden with respect to discussions, if any, during the July 16, 2013, BOE executive session regarding potential or actual communications to or with Kamenski's new employer.

The essence of Defendants' argument is that, because counsel was present at the July 16, 2013, executive session, the purpose of which Defendants assert was to discuss Kamenski's pending EEOC charge and the upcoming mediation regarding that charge, all discussions occurring during that executive session are subject to the attorney-client privilege. However, the attorney-client privilege protects only confidential disclosures made for the purpose of obtaining legal advice. *Reed*, 134 F.3d at 355-356. Thus, "the mere presence of counsel 'in the room' is insufficient to invoke the attorney-client privilege." *Maddox v. Board of Commissioners of Greene County*, 2014 Ohio App. LEXIS 1494, * 6-7 (Ohio App. Ct. 2014) (citing federal and state court cases as support).

In their Sur-Reply, Defendants cite *Alomari v. Ohio Dept. of Public Safety*, 626 Fed. Appx. 558, 572 (6th Cir. 2015) (unpublished), *cert. denied*, 136 S.Ct. 1228 (2016) (relying on *Rush v. Columbus Municipal School District*, 2000 WL 1598021 (5th Cir. Sept. 28, 2000) (unpublished)[8] to support their assertion of attorney-client privilege. At issue in *Alomari* were

---

[8] In *Rush* the Court noted that the mere presence of an attorney would not insulate a meeting from discovery (234 F.3d 706 at p. *2) but based its decision affirming the denial of a motion to compel disclosure of conversations held during an executive session in part on the fact that there was "nothing in the record indicating that any of the communications was for purposes other than the procurement of legal advice." *Id*. Here, Kamenski contends, and has submitted a declaration to support that the purpose of the July 16, 2013, executive session was not to obtain legal advice and that matters other than his EEOC charge were discussed during that session. *See* Doc. 57-1.

conversations that occurred during two separate meetings with in-house counsel for the Ohio Department of Public Safety.[9] *Alomari*, 626 Fed. Appx. at 569-573. The *Alomari* court concluded that, where the evidence submitted showed that the primary purpose of the meetings was to obtain legal advice all communications during those meetings were protected by the attorney-client privilege.

Here, Defendants have submitted the minutes of the July 16, 2013, BOE meeting but those minutes do not show that the BOE entered executive session to discuss pending or imminent litigation or to seek or obtain legal advice. Instead, the minutes reflect that the BOE went into executive session under subsection (G)(1) of O.R.C. § 121.22, not under subsection (G)(3), the subsection that permits an executive session for a conference with an attorney regarding pending or imminent court action. Had the BOE adjourned into executive session under subsection (G)(3) and had Defendants submitted evidence that the primary purpose of the executive session was obtaining legal advice, further consideration of Defendants' assertion that attorney-client privilege should apply to all discussions during the executive session based on *Alomari* might be warranted.[10]

For the reasons set forth above, the Court **DENIES** Defendants' request for a protective order on the basis of attorney-client privilege to prevent a deposition of Ratliff regarding discussions, if any, that occurred at any BOE executive session relating to potential or actual communications to or with Kamenski's new employer.

---

[9] Defendants incorrectly state that *Alomari* involved communications that occurred during an executive session of a school board. Doc. 77, p. 1.

[10] The Court need not and does not decide whether the predominant purpose test applied in *Alomari* would apply here if the facts were different.

**IV.     Conclusion**

Based on the foregoing, the Court **DENIES** Defendants' Motion for Protective Order, which seeks to preclude a deposition of Ratliff regarding what occurred during all BOE executive sessions, including the July 16, 2013 executive session,[11] and which specifically seeks to prevent discovery regarding discussions, if any, that occurred relating to potential or actual communications with Kamenski's new employer.[12]  The Court also **DENIES** without prejudice as premature Defendants' request for an in limine order to prevent Ratliff from testifying at trial regarding what transpired during executive sessions.

Nothing in this Order authorizes Plaintiff to seek discovery of information that in fact is protected by the attorney-client privilege.  Accordingly, Plaintiff is cautioned against inquiring into legal advice sought or received by the BOE regarding Kamenski's EEOC charges or the mediation that was scheduled but had not yet occurred as of the July 16, 2013, executive session.

**IT IS SO ORDERED**.

Dated: May 2, 2016

                                                            KATHLEEN B. BURKE
                                                            United States Magistrate Judge

---

[11] In their Motion, Defendants seek protection from discovery regarding all executive sessions but fail to provide any facts or argument regarding executive sessions other than the one held on July 16, 2013.

[12] Nothing in this Order constitutes a determination by the Court as to what was in fact discussed during any executive session.